SCHOOL DISTRICT NO. 142, HOLT COUNTY, APPELLANT, V. SCHOOL DISTRICT NO. 13, HOLT COUNTY, APPELLEE.

FILED DECEMBER 16, 1931. No. 27870.

*J. J. Harrington,* for appellant.

*Julius D. Cronin, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is a controversy between school districts No. 142 and No. 13, in Holt county, Nebraska, involving the question of the proper place of assessment of personal property of the Northern Nebraska Power Company consisting of a powerhouse and machinery and a dam across the Niobrara river. The crucial question is one of fact, that is, whether or not any of the personal property above referred to is located in school district No. 13, and this depends upon the location of the dividing line between Holt and Boyd counties, which is fixed by statute as the middle of the channel of the Niobrara river. The dividing line between the two school districts runs north and south across the river.

The powerhouse is located on the north bank of the river, about half of it being built into the bank and the other half over the river. It is about 60 feet north and south by 48 feet east and west, but does not stand square with the compass, a line from the northeast to the southeast corner of the building angling somewhat to the southwest, the dam continuing in that direction in a straight line. Immediately south of the southeast corner of the powerhouse is a concrete dam about 30 feet in length, then comes a 20-foot steel gate, then a spillway of con-

crete and steel 237 feet 6 inches long, then three gates 14 feet 10 inches each in width, and beyond that to the south a dirt dam of considerable length.

The line dividing the school districts, extended north, would pass through the powerhouse at a point 6 or 8 feet west of the southeast corner and come out of the north wall about 26½ feet west of the northeast corner, thus placing about a fourth of one-third of the powerhouse and a portion of the machinery therein contained east of the dividing line between the school districts, and it is because of this fact that district No. 13 claims that a portion of the taxes levied upon the personal property of the power company should be allocated to it. It is possible that an insignificant part of the concrete dam is east of the division line, but the great weight of the testimony establishes that all the works south of the powerhouse were west of the division line and they will be so considered.

The question was presented to the county board of Holt county sitting as a board of equalization, both parties producing evidence and represented by attorneys, and the board decided that a portion of the property was located in school district No. 13 and apportioned the taxes equally between the two districts. An appeal was taken by district No. 142 to the district court for Holt county, which confirmed the decision of the board of equalization, and the case is brought here for review by said district.

The case was presented in the district court and also in this court upon the testimony taken upon the hearing before the board of equalization, which constitutes the bill of exceptions herein. If any portion of the property, the subject of the assessment, is located in school district No. 13, the judgment of the district court must be affirmed, otherwise reversed.

As above stated, the real question for determination is the location of the main channel of the Niobrara river, fixed by the legislature many years ago as the northern boundary of Holt county, or as it existed at the time of

the erection of the dam, gradual changes being possible on account of the vagaries of the waters flowing through a sandy soil. The general features of the banks and bed of the river may be here noted. The north bank was 25 to 30 feet above the surface of the river and was composed largely of shale and soapstone; the bed of the river was sand, and the south bank of the same material, quite low; the distance between the banks in many places was more than 300 feet and waters flowed in many channels, the main channel being sometimes at one point and sometimes at another as the result of floods. At a place a quarter of a mile or more west of the dam, a tongue of low land (referred to as Whiting's) extended from the north bank to a point about half a mile south, and prior to the erection of the dam the waters flowed southeasterly around this point and then turned northeasterly until they passed under a steel bridge about 200 feet or more east of the dam, being thereto conducted by a series of riprapping on the south bank, at times ignoring these obstructions and washing out the highway south of the bridge, so that a cement bridge was put in west of the steel bridge to take care of these flood waters, since which time the main flow of the water was under the center of the steel bridge.

The real point of dispute is whether, at the time of the building of the powerhouse and dam, the main channel of the river west of the powerhouse was along the north bank, for which district No. 13 contends, or whether it was south of that bank a sufficient distance to clear the south line of the powerhouse.

About an equal number of witnesses were called by each party on this point, but it would unduly extend this opinion to recite and analyze their evidence, and it must suffice to give our conclusions from a careful study of the evidence, and the reasons therefor as briefly as may be.

The evidence for appellant, school district No. 142, is clear and specific that, at the time the powerhouse and dam were put in, the main channel of the river was at least 150 feet south of the north bank; and this is sup-

ported by the undisputed facts that there was a sandbar extending that distance south from the north bank at the time the construction of the improvements was commenced; that the powerhouse and connecting cement dam were built upon practically dry land, one-half of the powerhouse being built into the bank; that a cofferdam beginning about 30 feet west of the powerhouse and 150 feet in length extending in a southerly direction was built for the purpose of protecting the cement dam from overflow during construction, and that only the southern end of the cofferdam touched deep water; that in the building of the cofferdam they had no water to contend with for the first section; that the cofferdam was not put in until they started working beyond the sandbar and then for the purpose of protection from high water; that prior to the erection of the dam the waters came from the southwest in order to pass under the steel bridge, which fact was testified to by some witnesses of appellee as well as those of appellant. Some of appellee's witnesses testified that the main channel was along the north bank, but their evidence is not satisfactory and in some instances, in the opinion of the writer, fails to distinguish between the north bank east of the dam and east of the bridge and that portion west of the dam. In short, we are clearly of the opinion that by far the greater weight of the evidence establishes that the main channel of the Niobrara river at the time of the erection of the powerhouse was at a point 100 feet or more south thereof and that no portion of the powerhouse or dam lies within the lines of district No. 13. Upon a review of all the evidence it may be stated with absolute certainty that the entire power-house is in Boyd county. The main channel was estimated from 50 to 60, 100 and 150 feet in width before the dam was constructed. It would therefore follow that, even though it flowed up against the north bank, one-half (30 ft.) of the powerhouse being built into the bank, only a very negligible part, if any, would be south of the center of the channel in Holt county. If the powerhouse was 72

feet long, as said by one witness, and the river channel only 50 feet wide before the dam was built, only about 88 square feet of the powerhouse would be south of the center of the main channel. For purposes of assessment the power plant, including powerhouse dams, gates and spillways, must be treated as a unit, as it is impracticable to assess the respective portions of the plant separately.

Section 77-1415, Comp. St. 1929, provides that, where a question arises as to the place of listing and assessing personal property between two places in the same county, the place for listing same shall be fixed by the county board, and when so fixed "shall be as binding as if fixed in this chapter;" and in construing a similar section (section 42, art. I, ·ch. 77, Comp. St. 1905) in *Diemer & Guilfoil v. Grant County,* 76 Neb. 78, it was held that the determination of the county board would not be disturbed unless an abuse of discretion is shown.

The finding of the board was: "The property of the Northern Nebraska Power Company in Holt county, Nebraska, consisting of a dam, powerhouse and machinery across the Niobrara river, is situated in school district No. 142 of Holt county, Nebraska, and No. 13 of Holt county, Nebraska, and that the valuation for school tax purposes be equally divided between said school districts No. 142 and No. 13 of Holt county, Nebraska." The final question, therefore, is whether or not the county board abused its discretion in so holding. The proportion of the property, if any, of the power company in school district No. 13, as shown by the evidence in this case, is so infinitesimal as to call for the application of the doctrine of *de minimis non curat lex.* It would be manifestly unfair and unjust under these circumstances to allocate to district No. 13 one-half of the taxes upon the property of the power company, and we are forced to the conclusion that the board was guilty of an abuse of legal discretion in so doing.

The judgment of the district court will be reversed and the cause remanded, with instructions to enter a decree

that the proper place of assessment for taxation of the property of the power company is in school district No. 142, and certify their action to the county board.

REVERSED.